**Clarence VICTOR, Petitioner,**

v.

**Frank X. HOPKINS, Warden, Respondent.**

No. 4:CV94–3263.

United States District Court, D. Nebraska.

June 15, 1995.

Rick D. Lange, Rembolt Ludtke & Berger, Lyle J. Koenig, Lincoln, NE, for petitioner.

Don Stenberg, Atty. Gen., J. Kirk Brown, Kimberly A. Klein, Asst. Attys. Gen., Lincoln, NE, for respondent.

## MEMORANDUM AND ORDER

KOPF, District Judge.

In this habeas corpus case brought pursuant to 28 U.S.C. § 2254, Petitioner challenges his conviction for first-degree murder and use of a knife or dangerous weapon in the commission of a felony, and the sentence of death with a consecutive 20–year prison term which resulted. (Filing 18, Am.Pet.Writ Habeas Corpus, at 1–2, 11.) Pending before me are Magistrate Judge Piester's memorandum, order, and recommendation regarding Petitioner's motion to hold his habeas petition in abeyance and maintain the existing stay of execution pending exhaustion of state remedies (filing 44); Respondent's appeal from Judge Piester's order holding this proceeding in abeyance (filing 45); and Respondent's objection to Judge Piester's recommendation that the stay of execution previously entered by this court remain in effect while this matter is held in abeyance (filing 45).

After de novo review of the memorandum, order, and recommendation, I shall adopt Judge Piester's recommendation, as supplemented by the following discussion of the objection and appeal filed by Respondent, and I shall deny Respondent's objection and appeal. Further, I shall certify the controlling question of law in this case to the Eighth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b).

## I. BACKGROUND

On April 7, 1995, Petitioner filed a motion to hold this habeas corpus matter in abeyance and maintain the existing stay of execution pending Petitioner's exhaustion of state remedies, claiming that (1) Petitioner is entitled under Nebraska law to bring a second post-conviction proceeding because the basis now being relied upon for relief was not available to him when his first post-conviction action was filed on May 10, 1991; and (2)

Petitioner needs to engage in incompetency proceedings under Neb.Rev.Stat. § 29–2537 (Reissue 1989) in order to exhaust state remedies.[1] (Filing 37.)

More specifically, Petitioner's motion alleges that Mr. Thomas Riley, the attorney who represented Petitioner at trial, sentencing, and on direct appeal, also prepared Petitioner's pro se motion for post-conviction relief and coordinated its filing in the District Court for Douglas County, Nebraska. (Filing 37 at 1–2 & attached aff. of Thomas C. Riley.) Although the post-conviction motion which Riley prepared raised ineffective assistance of trial and appellate counsel for failure to raise certain issues outlined in the motion (*id.*, attached Motion to Vacate Sentence and Conviction at 5), such motion did not raise Riley's failure to adequately investigate and present evidence at trial and sentencing regarding Petitioner's disadvantaged background and his alleged physical, mental, and emotional defects, as compounded by Riley's undisclosed conflict of interest in preparing Petitioner's post-conviction pleadings when Riley was not counsel of record for those proceedings (filing 37 at 2). The latter are the "new" claims at issue here.

Petitioner's motion alleges that these bases of ineffective assistance of counsel were not "available" to Petitioner at his first post-conviction proceeding and were not alleged in Petitioner's first post-conviction motion because of Riley's "actual and material conflict of interest" in raising such claims. (Filing 37 at 3.) Accordingly, Petitioner filed a motion requesting that this court hold this matter in abeyance and maintain the existing stay of execution to allow Petitioner to exhaust his state remedies. (*Id.* at 4.) 28 U.S.C. § 2254(b), (c).

On April 21, 1995, Judge Piester issued a memorandum, order, and recommendation (filing 44) regarding Petitioner's motion, finding that:

1. Exhaustion requires federal courts to determine that a habeas claim has first been presented to the highest court of the state in which the judgment of conviction was entered, if available procedures exist to do so, before considering the merits of a habeas claim. If such a claim has not been presented to the state's highest court, the court must determine whether Petitioner has a presently available state court remedy. (Filing 44 at 4.)

2. Since some of Petitioner's claims of ineffective assistance of counsel were not presented to the Nebraska Supreme Court, a determination of whether Petitioner's claims have been "exhausted" hinges upon the availability of state court procedures by which Petitioner might raise these claims. (*Id.* at 5.) *See* Filing 37, attached Motion to Vacate Sentence and Conviction; *State v. Victor*, 242 Neb. 306, 494 N.W.2d 565 (1993); 28 U.S.C. § 2254(c) (an applicant for a writ of habeas corpus shall not be deemed to have exhausted the remedies available in the state courts if he has the right under state law to raise the question presented).

3. The availability of state court procedures is a question of state law, and under Nebraska law, it is unclear whether Petitioner has a state court procedure now "available" to him. (Filing 44 at 5 & 9.)

---

1. Neb.Rev.Stat. § 29–2537 (Reissue 1989) provides that custodians of prisoners who are held under a death sentence and who appear to be mentally incompetent shall give notice to a judge of the district in which the prisoner was tried and sentenced. The statute requires the judge to investigate and determine whether a commission should examine the prisoner for mental competence. If the commission finds a prisoner mentally incompetent, the judge must suspend the prisoner's execution.

Petitioner acknowledges that the issue of incompetency is not alleged in the pending habeas corpus petition because the issue would not be ripe for habeas review until after state competency proceedings occur. To promote judicial economy, Petitioner states that he raises this issue now so a state determination can be made during the requested abeyance period. (Filing 37 at 3 n. 1.)

To the extent Judge Piester's recommendation is based on Neb.Rev.Stat. § 29–2537, I decline to adopt it. A plain reading of that statute indicates that a prisoner's custodian, not the prisoner himself, is responsible for initiating the process which leads to a competency determination. Therefore, I would not, and do not, hold this habeas matter in abeyance to allow Petitioner to "initiate incompetency proceedings," as requested in Petitioner's motion (filing 37 at 4).

Accordingly, Judge Piester granted Petitioner's motion to hold this habeas proceeding in abeyance in order to allow Petitioner to return to the state courts and present his "new" claims of constitutionally ineffective assistance of counsel. (Filing 44 at 9 & 11.) Judge Piester also recommended, pursuant to 28 U.S.C. § 636(b)(1)(B), that Petitioner's motion to maintain the existing stay of execution (filing 5) be granted. (Filing 44 at 12.)

On May 4, 1995, Respondent filed both an appeal from Judge Piester's order holding this proceeding in abeyance and an objection to Judge Piester's recommendation that the stay of execution be maintained (filing 45), and on May 10, 1995, this court issued an order setting Judge Piester's memorandum, order, and recommendation and the objection thereto for oral argument on May 25, 1995. (Filing 46.)[2] Petitioner responded to Respondent's objection and appeal on May 15, 1995.

At the conclusion of oral argument on this matter, I asked counsel for Respondent to provide written responses to four questions: (1) whether Respondent is willing to waive the exhaustion requirement, including cause and prejudice, thereby enabling this court to move forward and address the merits of the pending ineffective assistance of counsel claims; (2) whether the State of Nebraska can assure the court that it will not seek from the Nebraska Supreme Court a death warrant, provided that Petitioner is pursuing the state court action with all deliberate speed; (3) whether Petitioner and Respondent could agree on a question and an appropriate factual context for certification to the Nebraska Supreme Court of the "availability" question, as suggested by Respondent; and (4) whether I should allow an interlocutory appeal to the Eighth Circuit Court of Appeals under 28 U.S.C. § 1292(b) if I adopt Judge Piester's recommendation, hold this matter in abeyance, and maintain the exist-

ing stay of execution.[3] (Tr. 51:25–53:19.)[4] I asked Petitioner's counsel to only address questions three and four, as questions one and two required responses from Respondent only.

Written responses were received from counsel for both Petitioner and Respondent on or before June 12, 1995. Because I was uncertain about the meaning of the Respondent's written response insofar as it pertained to the question of waiver of exhaustion, and because this uncertainty in turn clouded my understanding of Respondent's answers to the other questions, I conferred with counsel for Petitioner and Respondent in my chambers on June 13, 1995. Counsel gave me candid and helpful explanations of their positions. I now believe that I understand the position of the parties.

With regard to the first question—whether Respondent is willing to waive the exhaustion requirement, including cause and prejudice, thereby enabling this court to move forward and address the merits of the pending ineffective assistance of counsel claims—Respondent is willing to partially, but not completely, waive the exhaustion requirement. Essentially, Respondent wishes to preserve his argument for appeal purposes that Petitioner engaged in a procedural default when he failed to raise his "new" claims in the Nebraska courts as a part of the first post-conviction action and therefore Petitioner should be required to show cause and prejudice (or fundamental miscarriage of justice) as a precondition of the federal courts reaching the merits of his "new" ineffective assistance of counsel claims.

Specifically, Respondent agreed that he would not compel Petitioner to try to exhaust these "new" claims in state court *if* this court determined that Petitioner either had an available state remedy or this court was uncertain about the existence of an available state remedy. Under those circumstances,

---

**2.** Counsel were given the choice of setting oral argument for May 11 or 12, 1995, or the week of May 22–26, 1995. Both counsel chose May 25, 1995.

**3.** The court ordered that counsel submit responses to these questions by June 12, 1995, after asking counsel when such submissions could be

prepared. Petitioner requested June 13, 1995, and Respondent requested June 9, 1995. (Tr. 55:2–22.)

**4.** Citations to "Tr." refer to the transcript of oral argument in this matter, which was conducted on May 25, 1995.

Respondent would consent to a determination by this court of the merits of Petitioner's "new" claims. However, Respondent, nevertheless, intended to preserve for appeal the argument that this court should not have reached the merits of the "new" claims because Petitioner "defaulted" on those issues when he failed to raise them in the Nebraska courts as a part of the first post-conviction action.[5]

With regard to the second question—whether the State of Nebraska can assure the court that it will not seek from the Nebraska Supreme Court a death warrant, provided that Petitioner is pursuing the state court action with all deliberate speed—Respondent would not agree to such a concession because the Respondent may wish to present the "availability" question to the Nebraska Supreme Court in the context of seeking a death warrant.

With regard to third question—whether Petitioner and Respondent could agree on a question and an appropriate factual context for certification to the Nebraska Supreme Court of the "availability" question, as suggested by Respondent—both Petitioner and Respondent stated that they could not reach agreement on either the question or the factual context for a certification to the Nebraska Supreme Court. Respondent further indicated that the certification request to the Nebraska Supreme Court was no longer an option that Respondent wished to pursue if this court would permit an interlocutory appeal to the Court of Appeals.

With regard to the fourth question—whether I should allow an interlocutory appeal to the Eighth Circuit Court of Appeals under 28 U.S.C. § 1292(b) if I adopt Judge Piester's recommendation, hold this matter in abeyance, and maintain the existing stay of execution—Respondent agreed that such a procedure was desirable and Petitioner had no objection.

## II.  DISCUSSION

As noted above, Respondent has both appealed from Judge Piester's order holding this proceeding in abeyance, and has objected to Judge Piester's recommendation that the stay of execution previously entered by this court remain in effect while this matter is held in abeyance.

### A.  Respondent's Appeal

Respondent appeals from Judge Piester's order granting Petitioner's motion to hold this proceeding in abeyance pending exhaustion of state remedies, arguing that: (1) since Petitioner had the opportunity to raise his ineffective assistance of counsel claims when he proceeded pro se during his post-conviction action at the state district court level and when he proceeded with appointed counsel before the Nebraska Supreme Court on appeal of that post-conviction action, and since he failed to do so, Petitioner's ineffective assistance of counsel claims have been exhausted by procedural default, making Judge Piester's abeyance order unnecessary (Respt's Br. at 2–3); and (2) holding this proceeding in abeyance is "inappropriate and unnecessary" because the law in the Eighth Circuit does not mandate that federal district courts hold habeas cases in abeyance pending exhaustion of state remedies, the authority upon which Judge Piester relied in ordering abeyance is distinguishable from this case, and dismissal under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) is appropriate (*id.* at 2, 6–10).

### 1.  Respondent's First Argument:  Exhaustion by Procedural Default

As stated by Judge Piester.

---

5.  The difficulty with this concession is two-fold. First, if this court reached the merits and decided the merits in favor of Petitioner, but this court was later determined to be incorrect about the "availability" of state remedies (a question of state law), the time and effort devoted to a determination of the merits might be wasted since at that point the case would need to be remanded for a "cause and prejudice" determination inasmuch as a "default" would have occurred. No one's interest is served by handling this case twice in this court if one can reasonably avoid such duplicative effort. Second, Petitioner should be accorded an opportunity to obtain a definitive ruling on the state law question in state court if Respondent intends to later raise the "default"/"availability" and consequent "cause and prejudice" lack of exhaustion argument on appeal in federal court since the resolution of the dispositive issue of "availability" is a state, not a federal, law question.

Exhaustion requires a federal court, before considering the merits of a habeas claim, to determine that the precise claim has first been presented to the highest court of the state in which the judgment of conviction was entered, if procedures are available to do so. *Rose [v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)]; *cf. Gilmore v. Armontrout,* 861 F.2d 1061, 1065 (8th Cir.1988), *cert. denied,* 490 U.S. 1114 [109 S.Ct. 3176, 104 L.Ed.2d 1037] (1989). If the petition contains claims which have not been presented to the state's highest court, the next step is to determine whether petitioner has a presently available state court remedy. If he does, it is appropriate for a federal court to dismiss those claims without prejudice in order to allow petitioner to present them to the state courts. *Rose, supra; Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir. 1993). If petitioner does not have a presently available state court remedy, but had one available to him at an earlier time and failed to pursue it, the claim is procedurally defaulted, and federal habeas review is precluded unless petitioner can demonstrate cause for his default and actual prejudice resulting therefrom, or a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, [749–]750 [111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640] (1991); *Gilmore,* 861 F.2d at 1065–66.

(Filing 44 at 4–5.)

There is no dispute that Petitioner failed to present the "new" ineffective assistance of counsel claims to the Nebraska state courts in his first post-conviction action. *State v. Victor,* 242 Neb. 306, 312–13, 494 N.W.2d 565, 570–71 (1993). (Tr. 7:8–8:5; Petr's Br. at 5–6.) Thus, as stated by Judge Piester, the issue becomes whether Petitioner has an available state court remedy.

At oral argument on this matter, counsel for Respondent did not dispute Judge Piester's assessment of Nebraska law on "availability" of state court remedies; that is, "the Nebraska Supreme Court has not clarified

the parameters of the term 'available,' nor specifically addressed whether surrounding circumstances should be considered in determining availability." (Filing 44 at 6; Tr. 8:6–11:10.) However, counsel for Respondent maintained that a state remedy for Petitioner's ineffective assistance of counsel claims was literally and objectively "available" during Petitioner's state post-conviction proceedings, Petitioner failed to pursue those claims (Tr. 8:6–10:25), and therefore Petitioner's claims are procedurally defaulted (Tr. 5:21–23; 6:16–18; 9:1–4) unless Petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice.[6] In short, counsel for Respondent argues that "we don't see availability as being an issue in this case because the record, in our judgment, seems to clearly demonstrate that a remedy was available, and that ... Mr. Victor did not avail himself of it in a timely fashion." (Tr. 8:25–9:4.)

Respondent's argument is without merit. First, Respondent cannot both logically agree that the parameters of "availability"—including whether surrounding circumstances should be considered in determining availability—have not been determined by the Nebraska Supreme Court, while simultaneously arguing that the record in this case "clearly" demonstrates that Petitioner's remedy was "available" during his prior state post-conviction proceeding. If the definition of "available" is not clear, how can the record in this case "clearly" demonstrate the availability of Petitioner's state remedy, especially when the surrounding circumstances in this case (i.e., Mr. Riley's status as Petitioner's counsel during his first post-conviction action and Petitioner's mental state at that time) may be pivotal in the availability determination if such circumstances may be considered under Nebraska law?

Second, since multiple motions for post-conviction relief filed by the same criminal defendant have been permitted under Ne-

---

**6.** As noted earlier, *see* n. 5, *supra,* Respondent's counsel will not waive his argument that the Petitioner's "new claims" have been "exhausted" by "default" because Petitioner had an available remedy which he did not pursue and thus Peti-

tioner must show cause and prejudice (or fundamental miscarriage of justice) in order for this court to properly reach the merits of the "new claims."

braska law, Respondent cannot maintain with certainty that a second state post-conviction action would not be available in Petitioner's case. *See State v. Ronald E. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995) (relief granted on second motion for post-conviction relief regarding failure to include in jury instructions that malice is an element of second-degree murder and ineffective assistance of counsel in failing to object to that omission); *State v. Robert E. Williams*, Order Nos. S-95-0295 & S-42-0235 (Neb.Sup.Ct., March 22, 1995) (ordering district court to conduct evidentiary hearing on successive motion for post-conviction relief—apparently Williams' third motion—regarding the occurrence of and prejudicial nature of alleged juror misconduct; death penalty case); *State v. Robert E. Williams*, 218 Neb. 618, 358 N.W.2d 195 (1984) (finding that district court's refusal to grant evidentiary hearing on Williams' second motion for post-conviction relief was erroneous when second post-conviction motion raised several questions regarding defense counsel's possible conflict of interest; district court's denial of second post-conviction motion reversed and case remanded; death penalty case); *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1987, 95 L.Ed.2d 826 (1987) (second post-conviction motion allowed when Rust, then sentenced to death, argued ineffective assistance of counsel on the part of attorney who represented him on first post-conviction motion; district court's denial of relief affirmed; death penalty case).

While these cases and others indicate that subsequent or successive motions for state post-conviction relief may be entertained when the basis for such relief was not "available" at the time the prior motion was filed, these cases fail to detail the parameters of availability, or, as Judge Piester points out, fail to address whether certain surrounding circumstances should be considered in determining availability.

■ Because it is unclear whether Petitioner presently has available to him a second state post-conviction proceeding to address the ineffective assistance of counsel claims at issue here, Respondent's argument

that Petitioner's claims are procedurally defaulted is premature and without merit.

### 2. Respondent's Second Argument: Abeyance Procedure

Respondent's alternative argument seems to be that if Petitioner's ineffective assistance of counsel claims are "unexhausted" because Petitioner may have an "available" state remedy which he has not pursued, federal law does not require this court to hold the matter in abeyance while those claims are pursued at the state level; to the contrary, *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), requires dismissal of the matter during the pendency of the state proceedings. (Respt's Br. at 2, 6–10.)

■ As pointed out in Judge Piester's memorandum, *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), requires district courts to dismiss "mixed petitions"—that is, petitions for a writ of habeas corpus containing both unexhausted and exhausted claims. *Rose*, 455 U.S. at 510, 522, 102 S.Ct. at 1199, 1205. As discussed above, the issue here is *whether* Petitioner's claims have been "exhausted" at the state level, which I am currently unable to determine because it is unclear under Nebraska law whether Petitioner has a presently "available" state court remedy. *See* 28 U.S.C. § 2254(c) (habeas applicant shall not be deemed to have exhausted state remedies if he has the right under state law to raise, by any available procedure, the question presented). Since I cannot determine whether exhaustion has in fact occurred, and thus cannot characterize this petition as containing unexhausted claims subject to dismissal under *Rose*, application of *Rose* at this point in the proceedings is inappropriate.

Respondent's next argument is not that federal law *prohibits* holding this matter in abeyance while Petitioner's claims are pursued at the state level, but that federal law does not *require* such a procedure in cases like this. (Tr. 31:15–19.) As Respondent acknowledges, the Eighth Circuit Court of Appeals has stated that district courts entertaining habeas corpus petitions in death penalty cases may hold the petition in abeyance and maintain or issue a stay of execution

pending a state court's determination of the petitioner's claims. *Simmons v. Lockhart,* 915 F.2d 372, 377 (8th Cir.1990) (district court can hold habeas petition in abeyance and maintain existing stay of execution pending state court's determination of post-conviction proceeding); *Collins v. Lockhart,* 707 F.2d 341, 344 (8th Cir.1983), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985) (the total exhaustion rule of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), principles of comity, and the fact that the state supreme court had "left open the door" to successive state post-conviction proceedings under limited circumstances made it appropriate for district court to hold petitioner's habeas petition in abeyance under existing stay of execution while allowing petitioner to promptly present unexhausted federal constitutional claims to state supreme court); *Williams v. Wyrick,* 763 F.2d 363, 366 (8th Cir.1985) (district courts may, but are not required to, hold habeas petitions in abeyance pending state court proceedings; court here chose to affirm district court's dismissal of habeas petition for failure to exhaust).

While the law in this circuit may not *require* holding this proceeding in abeyance, the authority exists to do so. Therefore, Judge Piester's order holding this proceeding in abeyance pending further state proceedings (filing 44 at 11) is neither clearly erroneous nor contrary to law and Respondent's appeal from that order should be denied. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.") [7]

### B. Respondent's Objection

Respondent objects to Judge Piester's recommendation that Petitioner's motion to maintain the stay of execution previously ordered by this court (filing 5) be granted, arguing that even if holding this matter in abeyance pending exhaustion of state remedies is proper, maintaining the federal stay of execution is an "inappropriate exercise of federal jurisdiction." (Respt's Br. at 10.) Specifically, Respondent argues that the "legal limbo" created by this court holding habeas cases in abeyance pending exhaustion of state remedies, while at the same time maintaining federal stays of execution, presents an attractive, but abusive, option for state prisoners who are sentenced to death. (*Id.* at 11.) Respondent further asserts that if this matter is to return to the state courts, this court's role should end because there is no active litigation before it. (*Id.* at 12–13.) Finally, Respondent argues that the policy behind *Rose v. Lundy* indicates that federal courts should either pursue resolution of the habeas matter before it, or the matter should be dismissed. (*Id.* at 13–14.)

■ Case law in the Eighth Circuit indicates that a federal district court may hold a federal habeas corpus petition in abeyance, maintain or issue a stay of execution, and allow the petitioner an opportunity to exhaust his state remedies.

In *Collins v. Lockhart,* 707 F.2d 341 (8th Cir.1983), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), a petitioner who was sentenced to death pursuant to state statute appealed a district court's denial of his habeas action. The Eighth Circuit Court of Appeals reversed and remanded the case to the district court "with instructions to retain jurisdiction and hold the [habeas] case in abeyance *under the existing stay of execution* pending [the petitioner's] prompt presentation to the Arkansas Supreme Court of all his federal constitutional claims." *Id.* at 344 (emphasis added).[8]

---

**7.** I would reach the same conclusion as did Magistrate Judge Piester regardless of the standard of review. It would be unjust to force a petitioner in a death penalty case to make a *Rose v. Lundy* choice without knowing whether the petitioner had an available state remedy to pursue. *Rose,* 455 U.S. at 510, 102 S.Ct. at 1199 ("a district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court"). Given the concession of the Respondent that the Nebraska law is uncertain on this point, Judge Piester's utilization of the abeyance procedure is the correct procedure.

**8.** Judge Piester ordered Petitioner's counsel to provide this court with status reports every thirty days to assure prompt presentment to the state

Similarly, in *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir.1990), a habeas corpus case involving a petitioner who had been sentenced to death, the Eighth Circuit Court of Appeals, in its discussion of ineffective assistance of post-conviction counsel, disagreed with the district court, which held that counsel's failure to assert a conflict-of-interest claim in a state post-conviction proceeding was not unreasonable when counsel did not discover the conflict issue until after a federal habeas corpus petition had been filed and a stay of execution had been obtained from the district court. *Id.* at 376–77. The district court found that the filing of such a state post-conviction action after a federal habeas action had already been filed would have conceded nonexhaustion of state remedies, thereby causing the federal petition, "the source of the stay of execution," to be dismissed and the stay of execution to be dissolved. *Id.* The Eighth Circuit Court of Appeals disagreed, stating:

> It is no answer to argue, as the District Court did, that the filing of such a proceeding would have resulted in the dismissal of the federal habeas petition and the dissolution of the stay of execution. The habeas court could have held the petition in abeyance, *maintaining the stay of execution in effect,* pending the determination by the state courts of the [state post-conviction] proceeding.

*Id.* at 377 (emphasis added). The court held that post-conviction counsel should have preserved the petitioner's conflict claim by filing a state post-conviction action, despite the pending federal habeas corpus petition in district court. *Id. See also* James S. Liebman, 1 *Federal Habeas Corpus Practice and Procedure* § 13.3 at 187 (1988) ("The pendency or contemplation of state postconviction proceedings does not preclude a federal district court from taking or retaining jurisdiction over a habeas corpus petition and granting or extending a stay of execution pending exhaustion of state remedies").

Another Eighth Circuit case indicates that holding a federal habeas case in abeyance and entering a stay of execution in order to allow a habeas petitioner to exhaust state remedies is a discretionary option for federal district courts—that is, "they are not required to do so." *Williams v. Wyrick,* 763 F.2d 363, 366 (8th Cir.1985). In *Williams,* a state prisoner who was sentenced to death appealed the district court's dismissal of his habeas petition for failure to exhaust state remedies, arguing that the district court should have entered a stay of execution and retained jurisdiction pending exhaustion of state remedies. The court noted that the record failed to indicate a pending execution date set by the state; further, the state supreme court had procedures by which the petitioner could obtain a stay of execution pending completion of the state post-conviction proceedings. *Id.* Thus, the court deemed the case "a matter appropriately handled by the state courts at this juncture." *Id.*

■ Although the *Collins, Simmons,* and *Williams* cases do not articulate standards by which I am to determine whether holding this case in abeyance and maintaining the existing stay of execution is appropriate in this case, these cases clearly give me the discretionary authority to do so. In this case, the state offers me no assurance that it will not seek from the Nebraska Supreme Court a death warrant if I lift the existing stay of execution. (Tr. 20:11–25:24.) Thus, if I lift the stay of execution pending exhaustion of state remedies, and the state secures a death warrant from the Nebraska Supreme Court when the question of whether an available state remedy exists is still unresolved, I would undoubtedly be faced with another motion for a stay of execution, which I would be required to grant until the "available remedy" determination had been definitively made by the state courts. This chain of events would cause a " 'disturb[ance] by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' " *Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982) (quoting *Ex parte Royall,* 117 U.S.

courts. (Filing 44 at 12 ¶ 5.) Judge Piester also gave Respondent an opportunity to file a motion to lift the stay of execution and stay of these proceedings if at any time Respondent believed that Petitioner was not pursuing the state remedies with due diligence. (*Id.* at 12 ¶ 6.)

241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886)), and would exacerbate friction between the federal and state courts in cases involving prisoners' federal constitutional rights. *Id.* at 518–19, 102 S.Ct. at 1203–04.

Therefore, in light of the case law in this circuit granting me discretion to maintain an existing stay of execution and hold a habeas petition in abeyance pending the completion of state proceedings involving exhaustion, and in light of the policy considerations at issue here, I shall adopt Judge Piester's recommendation that I maintain the stay of execution previously ordered in this case (filing 5), and I shall deny Respondent's objection.

## III. CERTIFICATION OF CONTROLLING QUESTION OF LAW

■ Under 28 U.S.C. § 1292(b), when a federal district judge concludes that a civil order not otherwise appealable (1) "involves a controlling question of law as to which there is substantial ground for difference of opinion" and (2) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the judge shall so state in the order.[9]

### A. Substantial Ground for Difference of Opinion

#### 1. Abeyance Issue

As described in section II(A)(2) of this memorandum, although authority exists in the Eighth Circuit which allows this court to hold this matter in abeyance and maintain the existing stay of execution pending state court proceedings, there is a substantial ground for difference of opinion regarding when and under what circumstances a district court should exercise the abeyance procedure. For example, while the court in *Collins v. Lockhart*, 707 F.2d 341, 344 (8th Cir.1983), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), ordered the district court to hold its habeas case in abeyance under the existing stay of execution pending the petitioner's presentation to the

state supreme court of all his federal constitutional claims, the court in *Williams v. Wyrick*, 763 F.2d 363, 366 (8th Cir.1985) chose to affirm the district court's dismissal of its habeas action while further litigation proceeded in state courts since the state had not set an execution date and since the state supreme court had available procedures by which to obtain a stay of execution pending completion of state post-conviction proceedings. Neither of these cases set forth standards or factors to be used in determining whether and when to hold a case in abeyance.

The state of the law outside the death penalty context is equally as vague. *Compare Simpson v. Camper*, 927 F.2d 392, 393–94 (8th Cir.1991) (when availability of state remedy was possible and was "question of state law," and therefore exhaustion determination was impossible, court of appeals held habeas appeal in abeyance to allow petitioner to proceed in state court where the availability of a state remedy could be definitively determined); *Thomas v. Wyrick*, 622 F.2d 411, 414 (8th Cir.1980), *cert. denied*, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983) (since determination of whether state post-conviction proceeding was presently available to habeas petitioner would be "no more than a forecast" and was question of state law, court of appeals directed district court to hold habeas case in abeyance pending a determination by the state courts of petitioner's federal constitutional claim) *with Nottlemann v. Welding*, 861 F.2d 1087, 1088 (8th Cir.1988) (when habeas petitioner alleged unexhausted claims, court of appeals refused to direct district court to hold proceedings in abeyance pending petitioner's exhaustion of state remedies, stating that when a petitioner fails to exhaust, it is "not necessary or proper for the federal court to retain jurisdiction"); *Feeney v. Auger*, 808 F.2d 1279, 1283 (8th Cir.1986) (when state court remedy may have been available to habeas petitioners, but was "somewhat doubtful," court held "the better course is to dismiss this petition without prejudice and allow petitioners to obtain from the state courts a definitive decision

---

9. The Court of Appeals which would have jurisdiction of the appeal then has the discretion to permit an appeal from the order, if application is made to the Court of Appeals within ten days after entry of the district judge's order. 28 U.S.C. § 1292(b).

whether a state postconviction remedy is still open"); *Woods v. Kemna,* 13 F.3d 1244, 1245–46 (8th Cir.1994) (when exhaustion was questionable, court remanded for order of dismissal without prejudice when habeas petitioner had a "viable argument" and a "real possibility of qualifying" for a state remedy; court preferred that state supreme court "definitively answer the question"). *See, e.g., Barks v. Armontrout,* 872 F.2d 237 (8th Cir. 1989) (when habeas petitioner's attempts to seek redress in state court for claims not previously raised at state level would be "futile" because state law clearly indicated that state court would not entertain successive petitions, district court should proceed to cause and prejudice determination and not dismiss for further proceedings in state court).

### 2. Stay of Execution Issue

The cases cited in section II(B) above establish that there is a substantial ground for difference of opinion regarding the principles of discretion a federal district court is to employ in maintaining an existing stay of execution when a federal habeas petitioner is required to return to the state courts for exhaustion purposes. While *Collins v. Lockhart,* 707 F.2d 341 (8th Cir.1983), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), *Simmons v. Lockhart,* 915 F.2d 372 (8th Cir.1990), and *Williams v. Wyrick,* 763 F.2d 363, 366 (8th Cir.1985), grant district courts the authority to hold a federal habeas corpus petition in abeyance, maintain or issue a stay of execution, and allow the petitioner an opportunity to return to the courts of the state for exhaustion purposes, these cases fail to outline the standards by which a district court is to exercise its discretion in maintaining such a stay of execution.

This lack of standards may be contrasted to cases such as *Delo v. Blair,* —— U.S. ——, ——, 113 S.Ct. 2922, 2923, 125 L.Ed.2d 751 (1993), and *Richley v. Norris,* 32 F.3d 1237, 1239 (8th Cir.1994), which clearly set the standard for entering a stay of execution on a second or subsequent habeas petition—that is, whether "there are substantial grounds upon which relief might be granted." *Delo,*

—— U.S. at ——, 113 S.Ct. at 2923. *See also Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (lists four factors to be considered in determining whether a preliminary injunction should issue).

### B. Immediate Appeal Will Advance Termination of Litigation

An immediate appeal on the propriety of holding a federal habeas corpus case in abeyance and maintaining an existing stay of execution in order to allow the petitioner to exhaust his state remedies when it is unclear whether such remedies exist under state law may advance termination of this litigation in different ways, depending upon the court's ruling.

If the Eighth Circuit Court of Appeals determines that use of the abeyance/stay-of-execution procedure is erroneous because a habeas petition in these circumstances should be treated as a "mixed petition" under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), even though it is uncertain whether Petitioner has an available remedy under state law, either this federal habeas action would be dismissed to allow Petitioner to return to the state courts to try to exhaust his claims, or Petitioner's now-pending state proceeding (filing 48, Showing of Filing of Motion for Post–Conviction Relief in state court) would be terminated as a practical matter because Petitioner chose to amend his federal habeas petition to present only exhausted claims, thereby obviating the need to pursue the state remedy. *Rose,* 455 U.S. at 510, 102 S.Ct. at 1199 ("a district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court").

If, on the other hand, the Eighth Circuit Court of Appeals determines that holding this habeas case in abeyance pending exhaustion of currently uncertain state remedies is correct, but maintaining the existing stay of execution is erroneous, the State of Nebraska would then be able to file a motion for a death warrant as a means to expeditiously

present the availability-of-state-remedies question directly to the Nebraska Supreme Court without first litigating the issue in the lower state courts. (Tr. 20:16–21:11 (in ruling on motion for death warrant, Nebraska Supreme Court may (but would not be required to) decide whether pending state postconviction petition contains claims having an available state remedy).) [10]

### C. Certification

Because this order, not otherwise appealable, involves a controlling question of law as to which there is substantial ground for difference of opinion, and because an immediate appeal from this order may materially advance the ultimate termination of the litigation, the court, on its own motion,[11] certifies the following question for appeal to the Eighth Circuit Court of Appeals [12] pursuant to 28 U.S.C. § 1292(b):

> Can and should a federal district court in a federal habeas corpus action involving the death penalty hold the federal case in abeyance, retaining jurisdiction and maintaining the stay against execution, to allow the petitioner to exhaust his state remedies in a situation where it is unclear under state law that state procedures are available to the petitioner to raise his claims in state court?

IT IS ORDERED:

1. Judge Piester's Memorandum, Order, and Recommendation (filing 44) is adopted as supplemented by the foregoing;

2. Respondent's appeal (filing 45) from Judge Piester's order (filing 44) granting Petitioner's motion (filing 37) to hold this matter in abeyance pending Petitioner's exhaustion of state remedies is denied;

3. Respondent's objection (filing 45) to Judge Piester's recommendation (filing 44) that I grant Petitioner's motion (filing 37) to maintain the stay of execution previously ordered by this court (filing 5) pending exhaustion of state remedies is denied;

4. The following question is certified for appeal to the Eighth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b):

> Can and should a federal district court in a federal habeas corpus action involving the death penalty hold the federal case in abeyance, retaining jurisdiction and maintaining the stay against execution, to allow the petitioner to exhaust his state remedies in a situation where it is unclear under state law that state procedures are available to the petitioner to raise his claims in state court?

If application for appeal to the Eighth Circuit Court of Appeals is made within ten days after the date of this order, such application shall stay these proceedings pending resolution of the appeal (with the express understanding that the stay against execution remains in force).

### MEMORANDUM, ORDER, AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Petitioner has filed a motion to hold petition in abeyance and maintain stay pending exhaustion of state remedies (filing 37). The motion is grounded upon the proposition that some of petitioner's claims of ineffective assistance of counsel (see amended petition, filing 18, paragraphs 31 and 38) have not been presented to the state courts in a post-

---

10. Of course, should the Nebraska Supreme Court decide to issue a death warrant, but refrain from deciding the question of the availability of state court remedies, I would undoubtedly be required to issue a stay of execution so that the "availability" question could be definitively answered by the state courts.

11. As noted earlier, Respondent agrees that this is an appropriate procedure. Petitioner has no objection.

12. Respondent originally suggested certification to the Nebraska Supreme Court of the question

whether Petitioner has an available state remedy to address the particular ineffective assistance of counsel claims at issue here. (Respt's Br. at 14–15.) Certification of this question to the Nebraska Supreme Court appears unworkable since counsel for the parties have admitted that agreement on "all facts relevant to the questions certified" is doubtful. Neb.Rev.Stat. § 24–221 (Reissue 1989). (Tr. 25:25–30:21; 37:22–41:9.) See generally Neb.Rev.Stat. §§ 24–219 to 24–225 (Reissue 1989) (statutes addressing requests to Nebraska Supreme Court for certification of law).

conviction action, and that such an action is available to the petitioner at this time. Petitioner therefore appears to characterize his petition as a "mixed petition" as defined in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). He then proceeds to argue that this case should be stayed, but that the stay of execution should be left intact, while petitioner returns to the state courts of Nebraska to file a second post-conviction action raising his claims of ineffective trial counsel during both the guilt and sentencing phases of petitioner's trial.

Petitioner posits that his ineffectiveness claims were not available to him at the time of his first post-conviction action because, even though he was technically proceeding *pro se,* he was in fact "represented" and advised by Mr. Thomas C. Riley, the attorney who represented him at trial, sentencing, and on direct appeal. Because of Mr. Riley's prior representation of petitioner, Mr. Riley could not challenge as ineffective the professional services he had provided petitioner during the earlier stages of the case. The motion is supported by the affidavit of Thomas C. Riley, in which he explains that he prepared the petitioner's motion for post-conviction relief and had the petitioner sign it and file it so as to prevent the establishment of an execution date. Later, after the district court denied the petitioner's request for the appointment of counsel and denied relief on the motion for post-conviction relief, Mr. Riley contacted the petitioner again and prepared appropriate papers for petitioner to appeal the denial *pro se.*

Petitioner also alleges that he believes that "incompetency proceedings" under *Neb.Rev. Stat.* § 29–2537 are "appropriate," and necessary in order to exhaust petitioner's state court remedies. That section requires custodians of prisoners who are held under a sentence of death who may be "insane" to be examined by a three-member "commission" to determine their sanity, postponing execution until they have recovered.

The respondent opposes the motion, arguing that contrary to petitioner's allegation that he was "represented" in his post conviction action by Mr. Riley, he actually proceeded *pro se,* thus enabling him to raise any ineffective assistance claims that he desired to raise at that time. Thus, respondent asserts that the ineffective assistance claims now included in the habeas petition are in fact exhausted by procedural default, and that petitioner must overcome that default in order to have this court consider such claims.

Respondent further disagrees with the necessity or propriety in instituting incompetency proceedings pursuant to *Neb.Rev.Stat.* § 29–2537, arguing that only the prisoner's custodians may initiate such proceedings, not the prisoner himself, and further pointing out that no constitutional claim is included in the amended petition based upon the petitioner's alleged mental incompetency so as to prevent his execution.

Respondent further opposes the motion on procedural and delay grounds, claiming that even if this court were to conclude that the petitioner has available state court remedies, the appropriate action for this court under *Rose v. Lundy, supra,* would be to dismiss, rather than stay, this action while the petitioner returned to the state courts. In addition, respondent argues that with dismissal under *Rose,* this court is without jurisdiction to enter or continue its order staying the execution of the petitioner. Finally, respondent argues that allowing the petitioner to return to the state courts to raise his post-conviction claims, particularly if the stay remains in place, would provide motivation to the petitioner to delay the state court action as long as possible because "delay is always the friend of the murderer sentenced to death."

## DISCUSSION

This motion presents issues on the law of exhaustion as it has developed in habeas corpus cases under 28 U.S.C. § 2254(b). The exhaustion requirement, first enunciated in *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), is grounded in principles of comity and reflects a desire to "protect the state courts' role in the enforcement of federal law." *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) (quoting *Rose,* 455 U.S. at 518, 102 S.Ct. at 1203). It is also justified by the pragmatic recognition that

"federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." *Id.* (quoting *Rose,* 455 U.S. at 519, 102 S.Ct. at 1203–04); *see also Keeney v. Tamayo–Reyes,* 504 U.S. 1, 7–10, 112 S.Ct. 1715, 1719–20, 118 L.Ed.2d 318. Although not jurisdictional, it "creates a 'strong presumption in favor of requiring the prisoner to pursue his available state remedies'" *Castille,* 489 U.S. at 349, 109 S.Ct. at 1059 (quoting *Rose,* 455 U.S. at 515, 102 S.Ct. at 1201–02); *see* 28 U.S.C. §§ 2254(b) and (c).

■■■ Exhaustion requires a federal court, before considering the merits of a habeas claim, to determine that the precise claim has first been presented to the highest court of the state in which the judgment of conviction was entered, if procedures are available to do so. *Rose, supra; cf. Gilmore v. Armontrout,* 861 F.2d 1061, 1065 (8th Cir. 1988), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). If the petition contains claims which have not been presented to the state's highest court, the next step is to determine whether petitioner has a presently available state court remedy. If he does, it is appropriate for a federal court to dismiss those claims without prejudice in order to allow petitioner to present them to the state courts. *Rose, supra; Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir. 1993). If petitioner does not have a presently available state court remedy, but had one available to him at an earlier time and failed to pursue it, the claim is procedurally defaulted, and federal habeas review is precluded unless petitioner can demonstrate cause for his default and actual prejudice resulting therefrom, or a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991); *Gilmore,* 861 F.2d at 1065–66.

■■■ As the petitioner's claims of ineffective assistance of counsel have not been presented to the Nebraska Supreme Court, the principal issue raised by the motion is whether the petitioner now has "available" to him any state court procedure by which he might raise those claims found at paragraphs 31 and 38 of the amended petition. As seen from the above paragraph this question must be answered in order to determine whether those claims are "exhausted." The question of availability of state court procedures is a question of state, not federal, law. *Thomas v. Wyrick,* 622 F.2d 411 (8th Cir.1980).

The Nebraska Supreme Court has in recent years looked with disfavor on successive actions for post-conviction relief pursuant to *Neb.Rev.Stat.* § 29–3001 *et seq.* Its rulings are frequently summarized as follows:

> Once a motion for post-conviction relief has been judicially determined, any subsequent motion for such relief from the same conviction and sentence *may* be dismissed unless the motion affirmatively shows on its face that the basis relied upon for relief was not *available* at the time of the filing of the prior motion.

*State v. Ohler,* 215 Neb. 401, 405, 338 N.W.2d 776 (1983) (emphasis added). So far as I have been able to determine, the Nebraska Supreme Court has not clarified the parameters of the term "available," nor specifically addressed whether surrounding circumstances should be considered in determining availability.

In *State v. Reichel,* 187 Neb. 464, 191 N.W.2d 826 (1971) the Nebraska Supreme Court discussed the purposes behind its approach to successive motions for post-conviction relief:

> There ought to be some final end to litigation in a criminal case. Postconviction procedures come into play only after traditional criminal procedures have been completed. Postconviction remedies are cumulative and are not concurrent with any other remedy. There is no justification for allowing a prisoner to continue litigation endlessly by piecemeal postconviction attacks on his conviction and sentence.

191 N.W.2d at 827–28.

Further, the Nebraska Supreme Court has held that criminal defendants voluntarily proceeding *pro se* are held to the same standards of performance as represented defendants. *State v. Lindsay,* 246 Neb. 101, 107,

517 N.W.2d 102 (1994), citing *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993) and *State v. Shepard*, 239 Neb. 639, 477 N.W.2d 567 (1991). In each of those cases, however, it appears the criminal defendant had dismissed counsel or otherwise voluntarily decided to proceed *pro se*.[1] It is unclear whether the same standards of performance would be applied to a *pro se* party whose request for appointment of counsel has been denied by the court.

If the Nebraska courts were to consider the surrounding circumstances of (a) petitioner's *pro se* status at his post-conviction action, (b) his alleged mental deficiencies, and/or (c) the propriety and consequences of Mr. Riley's involvement in that case, they might conclude that petitioner's ineffectiveness claims were not then "available" to him in fact. In that event petitioner would not be barred from proceeding with a second post-conviction motion.

On the other hand, if the Nebraska courts hold petitioner to the same standards as counsel and decline to consider the surrounding circumstances, the ineffective assistance claims were "available" to him at the time of his first post-conviction motion. Thus, he could now be barred from proceeding with them in a second post-conviction motion.[2]

Faced with a similar issue concerning availability of state remedies, the Eighth Circuit Court of Appeals stated:

> This Court could embark on a lengthy canvass of all the relevant Missouri cases and attempt to predict whether, based on these precedents, a [state post-conviction] proceeding would lie to determine the [petitioner's claim]. We decline the invitation. The result of such an inquiry, however thorough, would be no more than a forecast on our part. Whether a state remedy is presently available is a question of state law as to which only the state courts may speak with final authority.

*Thomas v. Wyrick*, 622 F.2d 411, 414 (8th Cir.1980). In *Thomas* the Court of Appeals ordered that the case be remanded to the district court:

> with directions to hold it on the docket pending a determination by the state courts of the federal constitutional claim that Thomas now urges. If the state courts hear this claim on the merits and decide in Thomas's favor, this federal preceding will be moot. If the state courts hear the claim on the merits and decide against Thomas, he may return to the District Court, which will then have before it a federal constitutional question as to which state remedies have undoubtedly been exhausted. If the state courts decline to reach the merits of Thomas's claim because of some procedural default by him or his lawyer, state remedies will equally clearly have been exhausted. In the last event, Thomas may return to the District Court, which will then decide the merits of his federal constitutional claim, unless federal habeas is barred by the nature of Thomas's procedural default, if any.

---

1. In *State v. Bowen* the opinion recites that the post-conviction court did not appoint counsel, but it is unclear whether there was a request for appointment of counsel. In another case frequently cited for the proposition that the same standards apply to *pro se* litigants as to attorneys, *State v. Stickney*, 222 Neb. 465, 384 N.W.2d 301 (1986) the court specifically noted that Stickney had not requested counsel on his appeal, then stated: *"In that situation* we have uniformly held that if a defendant chooses to represent himself he 'must be held responsible for his ineptness of counsel even though that counsel was himself.'"* 384 N.W.2d at 302 (emphasis added), citing *State v. Brashear*, 201 Neb. 582, 584, 270 N.W.2d 924 (1978) (Defendant elected to proceed *pro se*).

2. In that event, however, the statute and the cases appear to allow the Nebraska courts to permit Victor to file and prosecute a second post-conviction motion, and it may be that the peculiar circumstances of this case would auger in favor of exercising that discretion. As with determining the availability of state court remedies to decide whether a criminal defendant is barred from filing a second post-conviction motion, the Nebraska Supreme Court has not considered to what extent, if at all, surrounding circumstances should be considered in deciding whether to exercise discretion and *allow* a criminal defendant to file a second motion. I do not consider that issue as relevant here, however, because the availability of only a discretionary review under

*Id.*[3]

As in *Thomas*, it is unclear whether Victor has a state court procedure now "available" to him, and this court cannot authoritatively decide that question. I conclude that the proper course in this case is to grant the motion for a stay of this proceeding to allow the petitioner to return to the state courts and present his claims of constitutionally ineffective assistance of counsel. If the state courts consider the merits of his claims, and deny relief, this court can then treat them as exhausted by presentment. Such a course will likely hasten their ultimate disposition, and will further the interests of comity and federalism underlying 28 U.S.C. § 2254, by providing the state courts with the first opportunity to address these claims. Obviously if the state courts decline to consider the merits of his ineffective assistance claims because of procedural default, this case may be reactivated. At that time petitioner may attempt to overcome the procedural default in this court by showing cause and prejudice or a fundamental miscarriage of justice. *Coleman v. Thompson, supra.*

Respondent objects to this court staying this proceeding, arguing that under *Rose v. Lundy, supra,* this case must instead be dismissed. It is true that when a habeas corpus petitioner presents a "mixed petition," that is, one which contains both "exhausted" and "unexhausted" constitutional claims, *Rose* requires that the petitioner be given an opportunity to elect whether to proceed in the habeas court with only his exhausted claims or, alternatively, to dismiss the entire petition without prejudice to complete exhaustion in the state courts. The problem with applying the *Rose* formulation in this instance, however, is that because of the issue concerning "availability" of state court remedies, it is impossible to determine whether, under state law, Victor's claims of ineffective assistance of counsel have been "exhausted." Thus, *Rose* is inapposite.

■ The question remains whether, during the stay of this proceeding, the previous order staying the execution of the petitioner should remain in effect.[4] Neither *Thomas* nor *Simpson* involved sentences of death which had been stayed by the federal district courts. I agree with the respondent that if this case were postured as *Rose v. Lundy, supra,* and if further the petitioner elected to dismiss this action and return to the state courts, this court would no longer have jurisdiction to stay his execution. At this stage of this proceeding, however, such a determination is premature.

I also agree with the respondent that delay is often a friend of capital habeas petitioners, and the petitioner in this case should not be allowed to protract proceedings simply to gain time. However, a review of the issues raised in petitioner's ineffective assistance claims yields the conclusion that they are seriously alleged, are not frivolous, and have not yet been considered by any court on their merits. While I have no doubt that the state courts, should they determine to consider Victor's ineffective assistance claims on the merits, would stay his execution pending determination of those issues, I shall not recommend that the stay of execution entered by this court be lifted. I believe that the interests of promptly determining Victor's claims will perhaps cause the state courts to expedite consideration of his claims, and his diligence in pursuing them can be monitored by this court, holding open the option to lift the stay of execution should he not pursue his claims with diligence. To facilitate such

---

state law would not be sufficient to block habeas proceedings.

**3.** Similar action was taken by the Eighth Circuit Court of Appeals in *Simpson v. Camper,* 927 F.2d 392 (8th Cir.1991). ("We take this action because, as in *Thomas v. Wyrick, supra,* '[o]nly in this way can the question of whether [Ms. Simpson] has a presently available state remedy be put to rest with legal certainty.'" citing *Thomas,* 622 F.2d at 414).

**4.** As a magistrate judge, I have no authority to order a stay of execution, or to lift such a stay, as such an order is in the nature of an injunction, *see,* 28 U.S.C. § 636(b). My consideration of this issue, therefore, is restricted to whether I should recommend any action regarding the stay of execution to the district judge pursuant to 28 U.S.C. § 636(b)(1)(A).

monitoring, I shall direct periodic reports on the progress of his state court litigation.

Dated April 21, 1995.